UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| DONALD MANN,<br><br>        Plaintiff,<br><br>   v.<br><br>MUTUAL OF OMAHA and DOES 1 through 20, inclusive,<br><br>        Defendant. | CIV. NO. 2:16-2560 WBS CMK<br><br>MEMORANDUM AND ORDER RE: MOTION FOR PARTIAL DISMISSAL |

----oo0oo----

Plaintiff Donald Mann brought this action against his insurer, Mutual of Omaha ("defendant"), alleging that defendant violated California law when it denied him medical benefits after he allegedly fell and suffered a head injury. (Notice of Removal, Compl. (Docket No. 1).) Before the court now is defendant's Motion to dismiss plaintiff's amended claim for intentional infliction of emotional distress. (Def.'s Mot. (Docket No. 19).)

1

I. <u>Factual and Procedural Background</u>

In 2006, defendant sold plaintiff an insurance policy that promised to pay him a "daily benefit" of at least $174 per day if his health deteriorates to the point where he: (1) requires "Human Assistance in performing at least 2 of 7 Activities of Daily Living," which is defined to include eating, bathing, dressing, toileting, "ambulating,"[1] "transferring,"[2] and "continence"[3]; or (2) becomes cognitively impaired to the point where he is placed "in jeopardy of harming [himself] or others, therefore requiring continual supervision by another person." (First Am. Compl. ("FAC") ¶ 4 (Docket No. 16); <u>id.</u> Ex. 1, Long-Term Care Insurance Policy at 3-4, 9.) The policy requires a monthly premium of $330.22. (FAC ¶ 3.)

Plaintiff alleges that in September 2009, he fell and suffered a head injury that resulted in "cognitive damage render[ing him] incapable of caring for his property on his own, transacting business on his own, and fully understanding the nature and effects of his acts." (<u>Id.</u> ¶ 7.) Plaintiff submitted a claim for "daily benefit[s]" under his policy with defendant in March 2010. (<u>Id.</u>)

---

[1] "Ambulating" is defined for these purposes as "walking or moving around inside or outside the home . . . ." (First Am. Compl. ("FAC") Ex. 1, Long-Term Care Insurance Policy at 3 (Docket No. 16).)

[2] "Transferring" is defined for these purposes as "moving from one sitting or lying position to another sitting or lying position . . . ." (Long-Term Care Insurance Policy at 3.)

[3] "Continence" is defined for these purposes as "control[ling one's] bowel and bladder . . . ." (Long-Term Care Insurance Policy at 3.)

2

Defendant conducted an evaluation of plaintiff's condition in April 2010, and allegedly found that plaintiff suffered from memory loss and speech problems. (Id. ¶ 19.) Defendant denied plaintiff's claim, however, "saying [that] he did not yet qualify for [daily] benefits" under the terms of his policy's qualification provision. (Id.) Since his claim was denied, plaintiff has continued to pay premiums on his policy with the expectation that his condition would eventually worsen to the point where he would qualify for daily benefits. (See id. ¶ 20.) He continues to submit renewed claims for daily benefits to defendant based on medical reports from his doctors purportedly showing that his health is worsening. (Id.) To date, defendant has not granted any of plaintiff's claims. (See id. ¶ 8.)

In August 2016, plaintiff filed this action in the California Superior Court. (Compl.) Plaintiff alleges that defendant breached the terms of his policy by denying and continuing to deny him daily benefits. (Id. ¶ 8.) He brings four causes of action against defendant based on its alleged breach of his policy: (1) breach of contract, (2) breach of the covenant of good faith and fair dealing, (3) intentional infliction of emotional distress ("IIED"), and (4) financial abuse of an elder, Cal. Welf. & Inst. Code § 15610.30(a)(1). (Id. at 9-14.) Defendant removed plaintiff's action to this court in October 2016. (Notice of Removal.)

On February 9, 2017, the court dismissed plaintiff's complaint with leave to amend ("February 9 order"). (Feb. 9, 2017 Order at 7 (Docket No. 14).) Plaintiff filed an amended

Complaint on February 28, asserting the same four causes of action he asserted in his original complaint. (FAC.) Defendant now moves to dismiss plaintiff's amended IIED claim. (Def.'s Mot.)

II. Legal Standard

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must accept the allegations in the pleadings as true and draw all reasonable inferences in favor of the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972). To survive a motion to dismiss, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

The "plausibility" standard, "asks for more than a sheer possibility that a defendant has acted unlawfully," and where a plaintiff pleads facts that are "merely consistent with a defendant's liability," the facts "stop[] short of the line between possibility and plausibility." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 557).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions . . . ." Twombly, 550 U.S. at 555 (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and "the tenet that a court must accept as true all of the

allegations contained in a complaint is inapplicable to legal conclusions." Iqbal, 556 U.S. at 678.

III. Discussion

To state an IIED claim under California law, a plaintiff must plead facts plausibly showing: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; (3) and actual and proximate causation of the emotional distress by the defendant's outrageous conduct." Cooper v. TriWest Healthcare All. Corp., No. 11-CV-2965-L RBB, 2013 WL 5883784, at *6 (S.D. Cal. Oct. 30, 2013) (quoting Cervantez v. J. C. Penney Co., 24 Cal. 3d 579, 593 (1979)).

The parties' dispute with respect to plaintiff's IIED claim centers on the issue of whether defendant engaged in any extreme and outrageous conduct towards plaintiff. The court dismissed plaintiff's original IIED claim because plaintiff did not allege that defendant engaged in any conduct that was allegedly extreme and outrageous other than denying his claims for daily benefits. (See Feb. 9, 2017 Order at 7.) "[M]ere denial or delay of insurance benefits," the court noted in dismissing plaintiff's claim, "does not constitute outrageous conduct" under California law. (Id. (quoting Cooper, 2013 WL 5883784, at *6).)

Plaintiff now alleges that "defendant . . . did not simply deny [him daily] benefits . . . but . . . continued to collect premiums [from him] without any intention to ever pay

5

[him daily] benefits."[4]  (Pl.'s Opp'n at 5-6 (Docket No. 21); see also FAC ¶ 20 ("[Defendant] has collected an additional $27,990.48 in premium[s] since May, 2010."); id. ¶ 22 ("[Defendant] . . . intended from the beginning to refuse to pay a claim such as Plaintiff's without regard to the facts.").)  He sets forth, in his amended Complaint, allegations accusing defendant of rejecting his claims for daily benefits without considering them in good faith.  (See id. ¶¶ 20, 22.) Defendant's failure to consider his claims in good faith, paired with the fact that it continues to collect $330 a month in premiums from him, plaintiff argues, constitutes extreme and outrageous conduct.  (Pl.'s Opp'n at 5-6.)

Assuming without deciding that an insurer's failure to consider a subscriber's claims in good faith while collecting premiums from him may constitute extreme and outrageous conduct under California law, see Hailey v. California Physicians' Serv., 158 Cal. App. 4th 452, 476 (4th Dist. 2007), plaintiff's argument that defendant acted in an extreme and outrageous manner by engaging in such conduct nevertheless fails because the facts pled in plaintiff's amended Complaint do not indicate that defendant failed to consider his claims in good faith.

The only factual allegations plaintiff offers in support of his claim that defendant failed to consider his claims for daily benefits in good faith are that defendant: (1) denied

---

[4] Plaintiff's original complaint contained this allegation.  (See Compl. ¶¶ 17-18 (alleging that defendant continues to collect premiums from plaintiff while refusing to consider his claims in good faith).)  However, the court did not expressly address the allegation in its February 9 order.

6

his initial claim for benefits despite finding that he suffered from memory loss that caused him to forget to attend to his stove at times and require assistance with "using the telephone, driving a vehicle, cooking, housework, laundry, and . . . shopping"; and (2) has continued to deny his renewed claims for benefits without considering his updated medical reports. (See FAC ¶¶ 19-20, 22.)

Plaintiff's allegation that defendant denied his initial claim despite finding that he suffered from memory loss that caused him to forget to attend to his stove at times and require assistance with certain activities does not show that defendant failed to consider his initial claim in good faith because such findings did not, in themselves, entitle plaintiff to daily benefits under the terms of his policy.

Plaintiff's policy states that he will be entitled to daily benefits if he: (1) "require[s] Human Assistance in performing at least 2 of 7 Activities of Daily Living," which is defined to include eating, bathing, dressing, toileting, ambulating, transferring, and continence; or (2) becomes cognitively impaired to the point where he is placed "in jeopardy of harming [himself] or others, <u>therefore requiring continual supervision by another person</u>." (Long-Term Care Insurance Policy at 3-4, 9 (emphasis added).) Defendant's alleged finding that plaintiff required assistance with "using the telephone, driving a vehicle, cooking, housework, laundry, and . . . shopping" did not entitle plaintiff to daily benefits because none of those activities constitute "Activities of Daily Living" as defined in plaintiff's policy. Defendant's alleged finding that plaintiff

7

would sometimes forget to attend to his stove also did not entitle plaintiff to daily benefits because that finding did not, in itself, establish that plaintiff's cognitive impairment placed him "in jeopardy of harming [himself] or others" such that he "<u>requir[ed] continual supervision by another person</u>."[5]

Plaintiff next alleges that defendant has continued to deny his renewed claims for daily benefits without considering his updated medical reports. Defendant's April 5, 2015 letter to plaintiff, however, explains in great detail how defendant's medical staff reviewed, investigated, and evaluated the merits of plaintiff's medical reports from 2010 to the present time. (See FAC Ex. 3, Aug. 5, 2015 Letter at 2-3 (Docket No. 16-1).) The letter also explains why the reports were insufficient to establish plaintiff's renewed claims for daily benefits. (See id. (stating that plaintiff's medical reports were contradicted by hospital records, failed to provide necessary facts, and failed to speak to certain requirements of plaintiff's policy).) Because defendant's April 5, 2015 letter to plaintiff indicates that defendant reviewed, investigated, and evaluated the merits of plaintiff's updated medical reports, plaintiff has not plausibly alleged that defendant failed to consider the reports in evaluating his renewed claims.

In sum, plaintiff has not alleged facts that plausibly show defendant is refusing to consider his claims for daily benefits in good faith.[6] The facts pled in plaintiff's amended

---

[5] Plaintiff has not offered any explanation for why he needs to use a stove on a continual basis.

[6] Plaintiff separately argues that defendant has no

8

Complaint appear to suggest, instead, that plaintiff simply disagrees with defendant's medical conclusions. Mere disagreement by an insurer with a subscriber is not extreme and outrageous conduct under California law. See Cooper, 2013 WL 5883784, at *2, 6 ("Mere denial or delay of insurance benefits," even where there is medical evidence suggesting that denial is improper, "does not constitute outrageous conduct sufficient to support an IIED claim.").

The only other allegedly extreme and outrageous conduct plaintiff discusses in his amended Complaint is defendant's failure to "unequivocally den[y]" his claims. Plaintiff suggests that defendant should have "unequivocally denied" his claims (that is, informed him that he should stop submitting claims and cancel his policy) at some point after he submitted his initial claim so that he would have stopped paying premiums on his policy. (See Pl.'s Opp'n at 6-7.) By failing to "unequivocally den[y]" his claims, plaintiff alleges, defendant encouraged him to continuing paying premiums on a policy which, to date, has not resulted in any benefits. (See FAC ¶¶ 20-21.) This, plaintiff argues, is extreme and outrageous conduct.

The court disagrees with plaintiff's position. Had defendant "unequivocally denied" plaintiff's claims, plaintiff

---

incentive to consider his claims in good faith because it knows that failing to consider his claims in good faith will not cause him to stop paying premiums, as he will not want to forfeit the value of premiums he has already paid. (See Pl.'s Opp'n at 6-7.) That defendant may not have an incentive to consider plaintiff's claims in good faith does not speak to whether defendant is in fact failing to consider his claims in good faith. As to that question, plaintiff has not offered sufficient factual allegations to support his conclusion.

9

would have been left without insurance coverage for his allegedly deteriorating health, and no ability to obtain such coverage elsewhere. (See id. ¶ 21 (alleging that plaintiff "cannot get coverage anywhere else [due to] his medical history").) By continuing to accept plaintiff's premiums and claims, albeit thus far declining to grant such claims, defendant has at least kept plaintiff covered against health deteriorations so significant that defendant's medical staff would agree that plaintiff qualifies for daily benefits. It cannot be said that defendant engaged in extreme and outrageous conduct by continuing to accept plaintiff's premiums and claims, when its acceptance of such premiums and claims was arguably more beneficial to plaintiff than an "unequivocal denial" of his claims would have been.

Because plaintiff has not identified any extreme and outrageous conduct by defendant in his amended Complaint, the court will dismiss his amended IIED claim.

While leave to amend a claim should be "freely given when justice so requires," AmerisourceBergen Corp. v. Dialysist West, Inc., 465 F.3d 946, 951 (9th Cir. 2006), it need not be given when amendment would be futile, see Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995) ("Futility of amendment can, by itself, justify the denial of a motion for leave to amend."). Plaintiff represented at the oral hearing for the present Motion that he is not aware of any additional facts he could allege in support of his amended IIED claim at the present time. In light of that representation, the court will dismiss plaintiff's amended IIED claim with prejudice.

IT IS THEREFORE ORDERED that defendant's Motion to

dismiss plaintiff's amended IIED claim be, and the same hereby is, GRANTED.  Plaintiff's amended IIED claim is DISMISSED WITH PREJUDICE.

Dated: April 20, 2017

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE